UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:09-cr-136-WTL-KPF-2 |
| | ) | |
| ALBERTO SANTANA-CABRERA and | ) | |
| ABEL FLORES-LOPEZ, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ENTRY ON PRETRIAL MOTIONS

In anticipation of trial on this matter Defendant Abel Flores-Lopez filed a Motion to

Suppress (Docket No. 90) and a Motion in Limine (Docket No. 91).  These motions are fully

briefed, and the Court being duly advised, **DENIES** the motion to suppress and **GRANTS IN**

**PART, DENIES IN PART, AND TAKES UNDER ADVISEMENT IN PART** the motion in

limine for the reasons set forth below.

## I.  BACKGROUND

On several occasions in July and August 2009, members of the Indianapolis Metropolitan

Drug Task Force used a confidential source to purchase crystal methamphetamine and weapons

from Defendant Alberto Santana-Cabrera.  The final controlled buy occurred on August 11,

2009, when the confidential source purchased one pound of crystal methamphetamine from

Santana-Cabrera for $17,000.  Prior to the buy, the confidential source was searched for

contraband and money and fitted with a recording and transmitting device.  During the course of

the August 11 buy, Santana-Cabrera insisted that the confidential source show him the cash

before he would provide the methamphetamine.  After the confidential source took Santana-

Cabrera to a parking lot where an undercover DEA agent "flashed" the money, the parties

headed back towards Santana-Cabrera's house.  En route, in response to the confidential source's

questions about the location of the drugs, Santana-Cabrera engaged in a cell phone conversation

with another individual, now identified as co-Defendant Abel Flores-Lopez, who was bringing

the drugs.  Santana-Cabrera placed his cell phone into speaker mode so that the confidential

source could hear the entire conversation.  Unbeknownst to both Santana-Cabrera and Flores-

Lopez, the call was also recorded by the confidential source's recording and transmitting device.

Shortly before reaching Santana-Cabrera's house, a white Dodge Ram pickup truck

driven by Flores-Lopez pulled up behind the confidential source's vehicle.  Santana-Cabrera

exited the confidential source's vehicle, entered the pickup truck, and emerged from the pickup

truck holding a clear plastic bag containing crystal methamphetamine.  When the confidential

source left, purportedly to retrieve the money, law enforcement officers arrested Santana-

Cabrera and Flores-Lopez.

After Flores-Lopez was taken into custody, officers proceeded to his home in Fishers,

Indiana.  They allegedly received consent to search the premises from Flores-Lopez's wife.  In

the house they found a safe containing among other things, approximately $53,000 and three

weapons.

### III.  DISCUSSION

Flores-Lopez has now filed a motion to suppress and a motion in limine.  The Court will

address these motions in turn.

### A.      Motion to Suppress (Docket No. 90)

Flores-Lopez seeks to suppress two pieces of evidence: (1) an August 11, 2009,

telephone conversation between Flores-Lopez and Santana-Cabrera that was recorded via the

confidential source's recording and transmitting device and (2) cash, firearms, and a religious

icon seized from Flores-Lopez's home safe.

With respect to the telephone conversation, Flores-Lopez claims that this call was

recorded in violation of the Federal Wiretap Act because the Government "knew that [Santana-

Cabrera] used a cell phone to communicate with others in his illicit activities, yet it failed and

refused to seek a court order to monitor [Santana-Cabrera's] phone." Docket No. 90 at 3. In

response, the Government claims that Santana-Cabrera consented to the interception of the

phone call when he placed his cell phone into speaker mode while the confidential source was in

the car.

Title 18, United States Code, Section 2511(2)(c) provides: "It shall not be unlawful under

this chapter for a person acting under color of law to intercept a wire, oral, or electronic

communication, where such person is a party to the communication or one of the parties to the

communication has given prior consent to such interception." In the instant case, by placing his

phone into speaker mode, Santana-Cabrera evidenced his intent that the confidential informant

could "intercept," or listen in on, the cell phone call. Although Flores-Lopez is correct that the

confidential source "was not a party to the telephonic conversation," Docket No. 90 at 2, he

ignores the fact that Santana-Cabrera allowed the confidential source to listen to the

conversation. Even though Santana-Cabrera may not have consented to the confidential source's

listening to the conversation had he known that the confidential source was working with the

Government, this is irrelevant. *See United States v. White*, 401 U.S. 745, 751 (1971) (noting that

because "the law gives no protection to a wrongdoer whose trusted accomplice is or becomes a

police agent," then the law should not "protect [the wrongdoer] when that same agent has recorded or transmitted the conversations which are later offered in evidence"). Accordingly, because Santana-Cabrera consented to the confidential source's listening to the conversation, Flores-Lopez's motion to suppress the August 11, 2009, conversation is **DENIED**.

As to the warrantless search of his home, Flores-Lopez does not contest the validity of the search of the entire house, instead he focuses on the search of his locked safe and claims that this portion of the search violated his Fourth Amendment rights. He claims that "[t]here is no evidence suggesting that [his wife] Juaquina gave consent to search." *Id*. at 6. In addition, Flores-Lopez asserts that Juaquina did not have "common authority" over the safe as she did not know its combination and did not have any of her belongings in the safe. *Id.*

Essentially, Flores-Lopez's argument boils down to a claim that, because Juaquina did not have access to, or control of, the safe, she could not consent to its search. This argument is not persuasive. First, in addition to containing $53,000 in cash and several firearms, the safe also housed, among other things, Juaquina's passport and the title to a vehicle owned solely by Juaquina. Second, the safe's location – in Juaquina's bedroom – further rebuts Flores-Lopez's argument that Juaquina did not have access to, or control over, it. Although it is true that Juaquina did not know the safe's combination, that alone does not convince the Court that the safe was solely her husband's property. Based on the totality of the circumstances, the officers were justified in believing that Juaquina had authority to consent, and did indeed consent to the search of the safe. *See Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990). Accordingly, Flores-Lopez's motion to suppress is **DENIED** as to the contents of the safe. In addition, Flores-Lopez's motion to have the items seized from the safe returned to him is also **DENIED**.

**B.      Motion in Limine (Docket No. 91)**

In his motion in limine, Flores-Lopez seeks to preclude the Government from mentioning

six pieces of evidence: (1) Flores-Lopez's past criminal history; (2) a statement made by

Santana-Cabrera to DEA agents concerning Flores-Lopez's unrelated drug trafficking activity;

(3) U.S. currency removed from Flores-Lopez's safe unless the Government first links the

money to the instant offense; (4) weapons removed from Flores-Lopez's safe unless the

Government links the weapons to the instant offense; (5) phone calls other than those from or to

Flores-Lopez's cell phone; and (6) commenting that it is Flores-Lopez heard talking to Santana-

Cabrera without first establishing that it is indeed Flores-Lopez's voice.

The Government indicated that it does not intend to introduce either Flores-Lopez's

criminal history or Santana-Cabrera's statement about Flores-Lopez's other drug trafficking

activity.  Accordingly, with respect to the first and second pieces of evidence, Flores-Lopez's

motion is **GRANTED**.

The third and the fourth pieces of evidence – the money and weapons seized from Flores-

Lopez's safe – can be addressed together.  Flores-Lopez argues that this evidence should not be

admitted until the Government lays a foundation showing a nexus between the guns, the money,

and the instant case.  In response, the Government claims that "it is axiomatic that both guns and

large sums of currency are both indicators of drug trafficking activity."  Docket No. 96 at 2.  The

Seventh Circuit has repeatedly stated that guns are tools of the drug trade and are therefore

relevant evidence in a drug case.  *See, e.g.*, *United States v. Bryant*, 418 F.3d 771, 779 (7th Cir.

2005); *United States v. Banks*, 405 F.3d 559, 571 (7th Cir. 2005).  In addition, "[e]vidence of

unexplained wealth is probative and therefore admissible if it 'creates a reasonable inference of

the defendant's involvement in the drug conspiracy or trafficking.'" *United States v. Penny*, 60

F.3d 1257, 1263 (7th Cir. 1995) (quoting *United States v. Davis*, 789 F. Supp. 1130, 1132 (D.

Kan. 1992)).  In *United States v. Carrera*, 259 F.3d 818, 829 (7th Cir. 2001), the court reiterated

this principle when it stated:

> [E]vidence of unexplained wealth is admissible in drug cases as long as: (1) the
> evidence presented creates an inference that the defendant was involved in drug
> trafficking; (2) the unexplained wealth was acquired during the period in which
> the drug crime allegedly occurred; and (3) the government presents other
> evidence to support the charged, including evidence that the income was not
> obtained through legitimate means.

Thus, in the instant case, Flores-Lopez's motion is limine is **DENIED** with respect to the

guns seized from his safe.  However, his motion is **TAKEN UNDER ADVISEMENT** as to the

cash found in his safe.  Until the Government satisfies the three-prong *Carrera* test, evidence of

the $53,000 from Flores-Lopez's safe will not be admitted.

As to the phone calls, the Government claims that this evidence is admissible non-

hearsay under FED. R. EVID. 801(d)(2)(E).  While this may be true, "[t]o utilize the co-

conspirator exception the government must show that: (1) a conspiracy existed; (2) the declarant

and the defendant were both members of the conspiracy; and (3) the statements were made in the

course and in furtherance of the conspiracy."  *United States v. Johnson*, 200 F.3d 529, 533 (7th

Cir. 2000).  In the instant case, until the Government satisfies the *Johnson* test, the evidence is

not admissible.  Accordingly, the Court takes this portion of Flores-Lopez's motion **UNDER**

**ADVISEMENT**.

Finally, with respect to the voice on the intercepted telephone call, the Court finds *United*

*States v. Neighbors*, 590 F.3d 485 (7th Cir. 2009), instructive.  In *Neighbors*, the Seventh Circuit

explained that only "minimal familiarity" is necessary to lay a sufficient foundation to satisfy

FED. R. EVID. 901(b)(5). Of course, the *Neighbors* court emphasized that "minimal familiarity"

is a low standard and "a witness's ability to hear an individual speak during a court proceeding

constitutes sufficient evidence to meet the minimal familiarity requirement of Rule 901(b)(5)."

*Id.* at 493. Nevertheless, before the Government can introduce the telephone call, allegedly

containing Flores-Lopez's voice, it must satisfy FED. R. EVID. 901(b)(5). Until the Government

does so, the evidence is inadmissible. Thus, Flores-Lopez's motion is **TAKEN UNDER**

**ADVISEMENT** as to the telephone call.

## CONCLUSION

For the foregoing reasons, Defendant Flores-Lopez's Motion to Suppress (Docket No.

90) is **DENIED**. Flores-Lopez's Motion in Limine (Docket No. 91) is **GRANTED IN PART,**

**DENIED IN PART, AND TAKEN UNDER ADVISEMENT IN PART**.

SO ORDERED: 04/28/2010

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Josh J. Minkler
United States Attorney's Office
josh.minkler@usdoj.gov

Rafael Ramirez
Ramirez Law Office
ramirezlaw@aol.com

U.S. Marshals Service

U.S. Probation Office